ROLAND L. BELSOME, Judge.
 

 11 Plaintiff-Appellant appeals four judgments: a judgment ordering Appellant’s child support arrearages executory, a judgment granting the right to claim tax deductions to Defendant-Appellee, a judgment providing for an Income Assignment Order and a judgment denying Appellant’s motion for a change of custody. For the reasons that follow, we vacate the two judgments and reinstate the original respective judgments, thereby affirming the Income Assignment Order and the trial
 
 *746
 
 court’s denial of Appellant’s Motion for Change in Custody.
 

 FACTS AND PROCEDURAL HISTORY
 

 Dana Matthew Lirette, Jr., the Appellant, and Danielle Wickramasekara, the Appellee, had three children during their marriage. This convoluted fact pattern began when Appellant filed a petition for divorce on December 8, 2002. On June 26, 2003, the petition for divorce was granted. On that date, the parties also entered into a consent judgment which ordered joint custody of the three minor children with Appellee as domiciliary parent; visitation by Appellant; child support 12payments of $1,500.00 per month by Appellant; and allowed Appellant to claim federal and state tax exemptions for all three children.
 
 [1]
 

 In August of 2005, Appellee and the minor children evacuated from Louisiana to stay with relatives in Indiana as a result of Hurricane Katrina.
 
 [2]
 
 On November 7, 2005, Appellant filed a Rule for Modification of Custody and Reduction in Child Support. On August 31, 2006, Appellee filed a motion for contempt against Appellant for failure to pay child support. The parties ultimately entered into a consent judgment
 
 [3]
 
 on September 28, 2007, which ordered Appellant to pay $5,500.00 in child support arrears and reduced the payment amount to “at least $1,000.00 per month of the court ordered $1,500.00 child support payments,” and provided that “[sjaid payment shall continue until a trial on the merits.”
 

 The matter went to trial on October 10, 2007. On October 19, 2007, the trial court signed a judgment denying Appellant’s motion for change of custody and to decrease child support, and granted Appel-lee’s motion for contempt for failure to pay child support, ordering payment to Appel-lee of attorney’s fees in the amount of $4,500.00. The October 19, 2007 judgment further provided for joint custody of the three minor children with Appellee as domiciliary parent, and provided for visitation by Appellant during the school year and during summer vacation months. On that date, an Income Assignment Order was also entered by the trial court against Appellant regarding child support payments, child support payment arrearages, the children’s health insurance premiums and tuition, and Appellee’s attorney’s fees.
 

 l.qOn October 29, 2007, Appellee filed a Motion for Clarification of Judgment Awarding Tax Dependency Deductions Pursuant to R.S. 9:315.18 and to Void Order Granting Tax Deductions to Petitioner [Appellant].
 

 Additionally, on November 15, 2007, Ap-pellee filed a second Motion for Clarification of Judgment, referencing the October 19, 2007 judgment, which failed to state the amount of health insurance arrearages owed by Appellant. The motion also requested that all past due support obligations become executory.
 

 On January 2, 2008, the trial court issued two judgments. The first decreed that the child support arrearages through September of 2007 of $12,017.00 be made executory; that the tuition which Appellant was to have paid' through September
 
 *747
 
 of 2007, in the amount of $11,558.00 be made executory; that the tuition for the 2007-2008 school year that was to be paid by Appellant, $2,173.00, also be made exec-utory;
 
 [4]
 
 that the amount of health insurance that Appellant failed to reimburse Appellant through September of 2007, $2,960.84, be made executory;
 
 [5]
 
 and that the amount of unreimbursed dental expenses through September of 2007, $214.20, also be made executory.
 
 [6]
 
 The judgment further ordered that Appellant be imprisoned for 45 days, but suspended the incarceration pending Appellant’s “fulfillment of a requirement that [Appellant] purge himself of contempt by paying the sum of $15,000 to [Appellee] on or before [January 22, 2008 at 9:00 a.m.].” The judgment, accordingly made executory by the trial court, decreed that Appellee could record same as a lien against any and all real property or other assets owned by Appellant in order to enforce the judgment.
 

 I/The second judgment signed by the trial court on January 2, 2008, voided the previous order granting Appellant the tax deduction for support of the three minor children, and granted Appellee the right to claim the children as dependents. Specifically, the judgment voided the Appellant’s right to claim the tax deductions for the years 2005, 2006, and 2007, in addition to all future years. The judgment further provided that if Appellant did pay the past due child support arrearages, he would retain the right to request to reclaim the tax deduction for support of the minor children, provided that he could demonstrate that the granting of the tax exemption would benefit him without significantly harming Appellee. This appeal followed.
 

 STANDARD OF REVIEW
 

 Findings of fact will not be disturbed on appeal unless manifestly erroneous or clearly wrong.
 
 Rosell v. ESCO,
 
 549 So.2d 840, 844 (La.1989). “When findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact’s findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said.”
 
 Id.
 
 Conversely, “where one or more trial court legal errors interdict the fact-finding process, the manifest error standard is no longer applicable, and, if the record is otherwise complete, the appellate court should make its own independent
 
 de novo
 
 review of the record and determine a preponderance of the evidence.”
 
 Evans v. Lungrin,
 
 1997-0541, p. 6-7 (La.2/6/98), 708 So.2d 731, 735.
 

 DISCUSSION
 

 | ¡Appellant sets forth the following assignments of error: 1) the trial court erred by granting Appellee’s motion for clarification of judgment awarding the tax dependency deductions and voiding order granting the tax deduction to Appellant; 2) the trial court erred by granting Appellee’s
 
 *748
 
 motion for clarification of judgment relating to the October 19, 2007 judgment; and 3) the trial court erred when it denied Appellant’s motion for modification of custody.
 

 Assignment of Error # 1 — October 29, 2007 Motion Regarding Tax Dependency Deductions
 

 In his first assignment of error, Appellant asserts that the trial court erred in granting Appellee’s Motion for Clarification of Judgment Awarding Tax Dependency Deductions Pursuant to La. R.S. 9:315.18
 
 [7]
 
 and to Void Order Granting Tax Deduction to Appellant.
 

 Appellant asserts that Appellee’s motion improperly seeks to amend a final judgment, the June 2003 consent judgment, which he argues may only be modified pursuant to La. C.C.P. art.1951.
 
 [8]
 
 Article 1951 provides that final judgments may only be amended by a trial court to alter phraseology, but not substance, or to correct errors of calculation. La. C.C.P. art. 1951. Appellant also argues that, even [ fiif Appellee’s October 29, 2007 motion for clarification was regarded as a motion for a new trial, that it was nevertheless untimely because it sought to amend the June 2003 judgment rather than the October 19, 2007 judgment.
 
 [9]
 
 Appellant further argues that to the extent Appellee’s October 29, 2007 motion sought to void or annul the June 2003 consent judgment, it is erroneous because no fraud or ill practices were alleged pursuant to La. C.C.P. art.2001.
 
 [10]
 
 Finally, Appellant argues that the trial court erroneously granted Appel-lee’s motion because it granted retroactive relief and was barred by
 
 res judicata
 
 and/or collateral estoppel pursuant to La. R.S. 13:4231,
 
 [11]
 

 et seq.
 

 
 *749
 
 Conversely, Appellee argues that the October 19, 2007 judgment did not adjudicate her right to claim the children as dependents in light of Appellant’s failure to pay child support, and the issue is thus not barred by
 
 res judicata
 
 pursuant to La. R.S. 13:4232(B).
 
 [12]
 
 Moreover, Appellee argues that the June 2003 |7consent judgment granted Appellant the tax deduction based on his presumed compliance with the remaining provisions of the judgment.
 

 Appellee submits that her motion for contempt sought to void Appellant’s right to claim the tax deduction, and that the October 19, 2007 judgment did not address that issue; thus, the court could revise its judgment in that respect.
 
 [13]
 
 Because the October 19, 2007 judgment did not offer Appellee the relief she sought, however, a motion for new trial or a timely appeal would have been the appropriate vehicle to challenge the October 19, 2007 judgment.
 
 Bourgeois v. Kost,
 
 2002-2785, p. 7-8 (La.5/20/03) 846 So.2d 692, 696;
 
 see also Levron v. State Through Dept. of Health & Hospitals
 
 94-2094 (La.App. 4 Cir. 4/24/96), 673 So.2d 279, 289. Accordingly, we find that the January 2, 2008 judgment divesting Appellant of his right to claim the tax deductions must be vacated, thereby reinstating the original provision regarding the tax deductions in the June 2003 consent judgment.
 
 See Bourgeois,
 
 846 So.2d at 696.
 

 Assignment of Error # 2 — November 15, 2007 Motion Regarding Arrearages
 

 In his second assignment of error, Appellant argues that the trial court erred in granting Appellee’s Motion for Clarification of Judgment relating to the October 19, 2007 judgment.
 

 Appellant argues that the second Motion for Clarification, which sought to order Appellant to reimburse her for health insurance expenses, to hold Appellant in contempt, and to specify and make executory the arrearages owed by Appellant, essentially repeated what Appellee sought in her Motion for Contempt. Accordingly, Appellant argues, because the October 19, 2007 judgment is silent on|sthese issues, it can be presumed that the judgment denied the relief sought. Furthermore, Appellant argues that assuming the trial court treat
 
 *750
 
 ed Appellee’s November 15, 2007 motion as a motion for new trial, it was untimely, as it was filed beyond seven days of the October 19, 2007 judgment.
 
 [14]
 
 Finally, Appellant submits that Appellee’s motion cannot seek to nullify the October 19, 2007 judgment, as no fraud or ill practices were alleged.
 

 Appellee submits that her August 31, 2006 Motion for Contempt requested that the Appellant’s arrearages be made execu-tory, that an Income Assignment be ordered, and that Appellant be assessed attorney’s fees and costs. Because the trial court’s October 19, 2007 judgment failed to address each of these issues, Appellee argues that the January 2, 2008 judgment was a valid revision of a partial judgment pursuant to Article 1915(B)(2)
 
 [15]
 
 and not an unauthorized revision of a final judgment. Specifically, Appellee submits that at the October 10, 2007 trial, there |8were seven issues
 
 [16]
 
 before the court, and that the October 19, 2007 judgment only disposed of four
 
 [17]
 
 of the seven issues, thus leaving three
 
 [18]
 
 issues not adjudicated.
 

 With regard to substantive amendments of signed judgments, the Louisiana Supreme Court held in
 
 Bourgeois v. Kost:
 

 It is well settled under our jurisprudence that a judgment which has been signed cannot be altered, amended, or revised by the judge who rendered the same, except in the manner provided by law. The trial judge cannot, on his own motion or on the motion of any party, change a judgment which has been so signed, notwithstanding it was signed in error.
 
 State ex rel. Vignes v. Judge
 
 
 *751
 

 Civil District Court,
 
 10 So. 294, 43 La.Ann. 1169 (La.1891);
 
 Villaume [v. Villaume],
 
 363 So.2d [448] at 450-51 [La.1978]. Without a specific statutory grant of authority, the trial court is limited to the general authorization for amending final judgments provided in Code of Civil Procedure Article 1951. As stated above, Article 1951 limits the amendment of judgments to the correction of errors in calculation and alteration of phraseology, but does not authorize a trial court to make substantive amendments to final judgments. Courts have uniformly held substantive amendments to judgments made without recourse to the proper procedures, i.e. by way of a timely motion for a new trial or by appeal, to be absolute nullities.
 
 LaBove
 
 [v.
 
 Theriot],
 
 597 So.2d [1007] at 1010 [(La.1992)].
 

 Bourgeois v. Kost,
 
 2002-2785, p. 7-8 (La.5/20/03) 846 So.2d 692, 696.
 

 We find that the January 2, 2008 judgment designating the arrearages as executory modified the substance of the October 19, 2007 judgment in violation of La. C.C.P. art.1951.
 
 Bourgeois,
 
 846 So.2d at 696;
 
 Levron v. State Through Dept. of Health & Hospitals
 
 94-2094 (La.App. 4 Cir. 4/24/96), 673 So.2d 279, 289. Louisiana jurisprudence mandates that a litigant may seek substantive changes to a judgment, including a judgment regarding custody or support, only by filing a |1(1motion for new trial or a timely application for appeal.
 
 Bourgeois v. Kost,
 
 2002-2785, p. 7-8 (La.5/20/03) 846 So.2d 692, 696;
 
 see also Hebert v. Hebert,
 
 351 So.2d 1199 (La.1977)(finding that trial court’s modification of support judgment from ordering the father to pay “the sum of $65 per week” to ordering payment of “the sum of $65.00 per week, of which $50.00 is to be paid in cash and $15.00 per week is to be paid for the payment of the mortgage on the home owned by the parties .... ” im-permissibly modified the substance of the original judgment);
 
 In re Green,
 
 08-782, p. 2 (La.App. 3 Cir. 12/10/08), 1 So. 3d 683, 684 (applying
 
 Bourgeois, supra,
 
 to affirm the trial court’s denial of a substantive change to a visitation judgment);
 
 Stoffer v. Stoffer,
 
 29,458 (La.App. 2 Cir. 5/7/97), 693 So.2d 1229, 1231;
 
 Rodgers v. Rodgers,
 
 26,-093, p. 3 (La.App. 2 Cir. 9/21/94), 643 So.2d 764, 766 (citing
 
 Hebert v. Hebert,
 
 supra);
 
 Williams v. Williams,
 
 590 So.2d 649 (La.App. 3 Cir.1991)(trial court erroneously amended judgment of separation by retroactively determining mortgage payments as child support);
 
 Schexnayder v. Schexnayder,
 
 503 So.2d 104 (La.App. 5 Cir. 1987),
 
 writ denied,
 
 506 So.2d 1228 (previous judgment reinstated when amended judgment impermissibly altered substance by addressing medical and hospital expenses and method of satisfying child support obligations).
 

 Although Appellant has unarguably demonstrated sufficient cause to designate Appellant’s arrearages as executory, for the aforementioned reasons, we must nevertheless vacate the January 2, 2008 judgment and reinstate the October 19, 2007 judgment.
 
 See Bourgeois,
 
 846 So.2d at 696;
 
 see also Rathborne v. Rathborne,
 
 2006-1518, p. 13-14 (La.App. 4 Cir. 12/3/08), 999 So.2d 816, 824-25;
 
 Sacks v. Mohawk Carpet Corp.,
 
 2003-0386 (La.App. 4 Cir. 8/20/03), 855 So.2d 359,
 
 writ denied,
 
 2003-2632 (La.12/12/03), 860 So.2d 1158. In Assignment of Error # 3—Modifica-tion of Custody
 

 In his third and final assignment of error, Appellant argues that the trial court erred in denying his motion for modification of custody.
 

 In order to modify a custody decree, the moving party must prove both a material change in circumstances and that the modification proposal is in the chil
 
 *752
 
 dren’s best interests.
 
 Evans v. Lungrin,
 
 1997-0541, p. 13 (La.2/6/98), 708 So.2d 731, 738. The Louisiana Supreme Court has stated that:
 

 [I]n cases where the original custody decree is a stipulated judgment, such as when the parties consent to a custodial arrangement, and no evidence of parental fitness is taken, the heavy burden of proof enunciated in
 
 Bergeron[ v. Bergeron,
 
 492 So.2d 1193 (La.1986)] is inapplicable.
 
 Hensgens [v. Hensgens,
 
 94-1200], 653 So.2d [48,] 52. Instead, where the original custody decree is a stipulated judgment, the party seeking modification must prove (1) that there has been a material change of circumstances since the original custody decree was entered, and (2) that the proposed modification is in the best interest of the child.
 
 Hensgens,
 
 653 So.2d at 52.
 

 Evans,
 
 708 So.2d at 738.
 

 Appellant argues that the court erred in denying his motion for modification of custody, asserting: that Appellee had enrolled the children into four different schools in a nine-month period; that Appellee would not assist in transportation to facilitate visitation between the children and Appellant after relocating to Indiana; that Appellant has since remarried and enjoys flexible hours, thus providing the opportunity for Appellant to spend evenings and school mornings with the children; and that Appellant encourage contact between Appellee and the children. In the alternative, Appellant requests a set visitation schedule guaranteeing time with the kids and establishing a transportation plan.
 

 Next, Appellant references the court’s expert’s first report. The court’s expert, Claire Hesse, issued two reports, the first dated December 1, 2006, and the | ^second dated September 10, 2007.
 
 [19]
 
 Appellant ar•gues that the first report demonstrates that Appellee was not providing a stable environment for the children; that seven years prior, Appellee experienced anxiety, depression and mood swings for which she took medication; and that Appellee had impulse control issues and low frustration tolerance that could result in difficult family relationships. Appellant argues that the trial court erroneously departed from Ms. Hesse's custody recommendations. Specifically, Appellant complains that the court did not provide for two uninterrupted weeks of vacation with the children as recommended and that the court’s judgment did not address his request for a transportation plan.
 
 [20]
 

 Conversely, Appellee argues that the trial court correctly denied Appellant’s motion for modification of custody. Appellee relies upon the most recent report issued by Ms. Hesse, in addition to Ms. Hesse’s testimony at trial. Specifically, Appellee notes that Ms. Hesse testified, after being asked by the trial judge whether she thought it was in the best interest of the children to stay in place with Appellee as the domiciliary parent or if the kids would benefit from moving to Appellant’s home, Ms. Hesse testified:
 

 No, I think they are doing fine where they are. I think the proof of the pudding is in the tasting, as they say. And they are doing well. They have been—
 
 *753
 
 the thing I feel most strongly about over the time I have known this family is how much they have been disrupted. But by all of these changes in school, I think it’s really important for them to stay put for a while.
 

 Ms. Hesse further testified that the children were all doing well in school at that time, absent very little, and well-adjusted, and that she recommended Appellee | ¶ shave custody during the week and Appellant have visitation on the weekends, summer and holidays. Moreover, Appellee submits that other testimony at trial by Ms. Hesse demonstrates that the request for modification of custody was rightfully denied, including Ms. Hesse’s acknowl-edgement of Appellant’s continued lack of financial support, the pattern of Appellant resisting orders to support the children and attempting to make the payments less and less and not paying what is ordered.
 

 With respect to Ms. Hesse’s most recent written report, Ms. Hesse noted that although “[b]oth parents obviously love and are very important” to their children, there was a lack of cooperation between the parents, in part caused by “[Appel-lee’s] financial anxiety due to alleged arrears and inconsistent payment of child support obligations by [Appellant].” Ms. Hesse recommended that the parties communicate directly to commit to a predictable and regular schedule. Additionally, Ms. Hesse suggested that the parties enroll in parent education classes to coordinate the parenting approach in both homes to provide “a consistent message about values, expectations, and consequences”, and also to utilize a family mediation specialist regarding disagreements prior to initiating further litigation.
 

 Ms. Hesse’s September 2007 report also assessed other factors, including the employment and financial status of each parent and the children’s schools. She recommended strongly that the children not be transferred from their current schools. With regard to the financial status, Ms. Hesse recognized Appellant’s court order to pay arrears and child support, but noted his failure to do so. She further acknowledged that according to Appellant’s self-report, his individual annual income was approximately $60,000 per year (excluding his wife’s financial [ Ucontributions), while Appellee’s annual income was $20,000, and thus a “large discrepancy between the standards of living of the parents.” Ms. Hesse reported that Appellant “has many luxury items such as a boat, a swimming pool, and European vacations”, while Ap-pellee “struggles financially and cannot depend upon timely and full payment of child support from [Appellant].”
 
 [21]
 

 Finally, Ms. Hesse’s September 2007 report recommended a detailed visitation schedule for the parties with respect to a school year schedule, a summer schedule, a summer extended vacation schedule, holidays, Mother’s Day and Father’s Day, and general guidelines for parental responsibility for transportation and extracurricular activities.
 

 Upon a careful review of the record, we do not find that the trial court erred in denying Appellant’s request for modification of custody in this case. We cannot say that the trial court was erroneous in determining that a modification of custody was not in the children’s best interest.
 

 
 *754
 
 Income Assignment Order
 

 Appellant argues that the trial court erred in entering the October 19, 2007 income assignment order to satisfy the child support arrearages, reimbursement for the children’s health insurance premiums, and/or the children’s school tuition, and attorney’s fees and costs. The order provided that Appellant’s employer must deduct $100.00 per month from Appellant’s earnings to satisfy the judgment. Appellant submits that because the October 19, 2007 income assignment order had not specifically determined that any of the arrearages were due and had not made any arrearages executory, nor ordered Appellant to reimburse Appellee for health 11Binsurance premiums and/or tuition, that the income assignment order went beyond the scope of the October 19, 2007 and June 26, 2003 judgments.
 

 The June 26, 2003 consent judgment provided that “If any [child support] payment is more than FIFTEEN (15) DAYS late then Dana Matthew Lirette, Jr. shall be subject [to] Income Assignment without further court action.” The October 19, 2007 judgment explicitly found that Appellant’s child support payments were more than fifteen days late and that he owed arrearages for same. Accordingly, we do not find that the trial court erred in granting the Income Assignment Order.
 

 CONCLUSION
 

 For the foregoing reasons, the trial court’s January 2, 2008 judgment with respect to the tax dependency deduction is vacated. The January 2, 2008 judgment regarding Appellant’s arrearages and contempt is also vacated and the October 19, 2007 judgment is hereby reinstated. The trial court’s denial of Appellant’s request for a change of custody is affirmed, and the trial court’s grant of the Income Assignment Order is also affirmed. Appel-lee’s request for costs and attorney s fees is denied.
 

 AFFIRMED IN PART; VACATED IN PART; ORIGINAL JUDGMENTS REINSTATED.
 

 [1]
 

 . The June 26, 2003 consent judgment also contained provisions regarding spousal support, school tuition payments for the minor children, arrears for child support payments, and health and medical expenses.
 

 [2]
 

 . Hurricane Katrina struck the Louisiana coast on August 29, 2005.
 

 [3]
 

 .The consent judgment further provided that Appellant provide discovery responses to Ap-pellee by August 1, 2007, and ordered the parties to complete an updated custody evaluation with the court evaluator prior to the October 10, 2007 trial.
 

 [4]
 

 . The judgment further provided that Appel-lee had paid the $11,558.00 in tuition expenses through September of 2007, and had also paid the $2,173.00 tuition for the 2007-2008 school year.
 

 [5]
 

 . The judgment provided that Appellee had incurred the costs of maintaining health insurance for the children through September of 2007 as well.
 

 [6]
 

 .Accordingly, the amount of arrearages in the January 2, 2008 judgment totaled $28,953.04, plus legal interest from the date the original payments were due, in addition to the attorney’s fees ($4,500.00) and court costs sustained by Appellee to collect the arrearag-es.
 

 [7]
 

 .A. The amounts set forth in the schedule in R.S. 9:315.19 presume that the custodial or domiciliary party has the right to claim the federal and state tax dependency deductions and any earned income credit. However, the claiming of dependents for federal and state income tax purposes shall be as provided in Subsection B of this Section. B. (1) The non-domiciliary party whose child support obligation equals or exceeds fifty percent of the total child support obligation shall be entitled to claim the federal and state tax dependency deductions if, after a contradictory motion, the judge finds both of the following:
 

 (a) No arrearages are owed by the obli-gor.
 

 (b) The right to claim the dependency deductions or, in the case of multiple children, a part thereof, would substantially benefit the non-domiciliary party without significantly harming the domiciliary party.
 

 (2) The child support order shall:
 

 (a) Specify the years in which the party is entitled to claim such deductions.
 

 (b) Require the domiciliary party to timely execute all forms required by the Internal Revenue Service authorizing the non-domiciliary party to claim such deductions.
 

 C. The party who receives the benefit of the exemption for such tax year shall not be considered as having received payment of a thing not due if the dependency deduction allocation is not maintained by the taxing authorities.
 

 La. R.S. 9:315.18 (emphasis added).
 

 [8]
 

 . Appellant also submits that to the extent Appellee's motion was treated as a motion for new trial, it was improper because it was served via certified mail and not by a sheriff pursuant to La. C.C.P. art 1314.
 

 [9]
 

 . Appellant also notes that Appellee's motion for clarification of judgement fails to state a cause of action because such a motion does not exist in the Louisiana Code of Civil Procedure.
 

 [10]
 

 . “The nullity of a final judgment may be demanded for vices of either form or substance, as provided in Articles 2002 through 2006.” La. C.C.P. art.2001.
 

 [11]
 

 . Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent:
 

 (1) If the judgment is in favor of the plaintiff, all causes of action existing at the time
 
 *749
 
 of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and merged in the judgment.
 

 (2) If the judgment is in favor of the defendant, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars a subsequent action on those causes of action.
 

 (3) A judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment.
 

 La. R.S. 13:4231.
 

 [12]
 

 . B. In an action for divorce under Civil Code Article 102 or 103, in an action for determination of incidental matters under Civil Code Article 105, in an action for contributions to a spouse's education or training under Civil Code Article 121, and in an action for partition of community property and settlement of claims between spouses under R.S. 9:2801, the judgment has the effect of
 
 res judicata
 
 only as to causes of action actually adjudicated.
 

 La. R.S. 13:4232(B)(emphasis added). Article 105 provides as follows:
 

 In a proceeding for divorce or thereafter, either spouse may request a determination of custody, visitation, or support of a minor child; support for a spouse; injunctive relief; use and occupancy of the family home or use of community movables or immov-ables; or use of personal property.
 

 La. Civil Code Art. 105.
 

 [13]
 

 . Appellee also argues that the trial court correctly allowed her the tax deduction because to allow a non-domiciliary parent to receive the tax deduction is
 
 contra bonos mores.
 

 [14]
 

 . Appellant also submits that to the extent Appellee's motion was treated as a motion for new trial, it was improper because it was served via certified mail and not by a sheriff pursuant to La. C.C.P. arts.1976 and 1314.
 

 [15]
 

 .
 

 B. (1) When a court renders a partial judgment or partial summary judgment or sustains an exception in part, as to one or more but less than all of the claims, demands, issues, or theories, whether in an original demand, reconventional demand, cross-claim, third party claim, or intervention, the judgment shall not constitute a final judgment unless it is designated as a final judgment by the court after an express determination that there is no just reason for delay.
 

 (2) In the absence of such a determination and designation, any order or decision which adjudicates fewer than all claims or the rights and liabilities of fewer than all the parties, shall not terminate the action as to any of the claims or parties and shall not constitute a final judgment for the purpose of an immediate appeal. Any such order or decision issued may be revised at any time prior to rendition of the judgment adjudicating all the claims and the rights and liabilities of all the parties.
 

 La. C.C.P. art 1915(B)(2).
 

 [16]
 

 . 1) Appellant’s Motion for Change in Custody;
 

 2) Appellant's Motion for a Reduction in Child Support;
 

 3) Appellee's Motion for Contempt of Court for Failure to Pay Child Support;
 

 4) Appellee’s Motion to Set Arrearages and for Arrearages to be Made Executory;
 

 5) Appellee's Motion for an Income Assignment Order against Appellant;
 

 6) Appellee's Motion that Appellant Be Ordered to Pay Her Attorney's Fees and Costs; and
 

 7) Appellee's Motion for the Federal and State Tax Deduction.
 

 [17]
 

 . Appellant's Motion for Change in Custody; Appellant’s Motion for a Reduction in Child Support; Appellee's Motion for Contempt of Court for Failure to Pay Child Support, and Appellee’s Motion that Appellant Be Ordered to Pay Her Attorney’s Fees and Costs.
 

 [18]
 

 . Appellee’s Motion to Set Arrearages and for Arrearages to be Made Executory; Appel-lee's Motion for an Income Assignment Order against Appellant; and Appellee’s Motion for the Federal and State Tax Deduction.
 

 [19]
 

 . The December 1, 2006 report was based upon interviews with the mother, father, the father's wife, and the children, in addition to psychological testing (Minnesota Multiphasic Personality Inventory) of both the mother and father. The September 10, 2007 report was based on information collected from subsequent interviews with the mother, father, and the children.
 

 [20]
 

 . According to Appellant, Appellant and Ap-pellee live 26 miles apart, or 50 minutes driving time. Appellant resides in Belle Chasse and Appellee lives in Metairie.
 

 [21]
 

 . Appellee references her own testimony at trial alleging several instances of emotionally and verbally abusive behavior by Appellant towards the children. Additionally, Appellee references her testimony at trial with respect to Appellant’s complaints regarding the changing of children’s schools, arguing that Appellant actually removed the children from their private school and put them in a public school.